UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHARONDA QUALLS, individually and as Guardian Ad Litem for her two infant children, LAWRENCE QUALLS and FATIESHA QUALLS, GARETH JONES, by his mother and Guardian Ad Litem, Rashene Jones,<br><br>        Plaintiff,<br><br>  vs.<br><br>CITY OF NEWARK, KURT SCHWINDELL, individually and in his capacity as Detective in the Essex County Prosecutor's Office, NEWARK POLICE DEPARTMENT, WILLIE THOMAS, individually and in his capacity as an Officer of Newark Police Department, STEPHANIE TREADWELL, individually and in his capacity as an Officer of the Newark Police Department, JOHN DOE(S) 1-20 (fictitious name), and ABC PUBLIC ENTITY,<br><br>        Defendants. | **CIVIL ACTION NO. 01-2869 (WHW)** |

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT KIRK SCHWINDEL'S, IMPROPERLY PLEADED AS
KURT SCHWINDELL, MOTION FOR SUMMARY JUDGMENT**

_____

                              **ALGEIER WOODRUFF, P.C.**
                              60 Washington Street
                              Morristown, New Jersey 07960
                              (973) 539-2600
                              Attorneys for Plaintiffs

1

On the Brief:
Kathryn J. Kingree, Esq.
Robert B. Woodruff, Esq.

Plaintiffs submit this memorandum of law in opposition to defendant Kirk Schwindel's (improperly pleaded as Kurt Schwindell) motion for summary judgment.

### **PRELIMINARY STATEMENT**

Plaintiffs' Second Amended Complaint (Exhibit A to Certification of Paulette Brown in Support of Defendant's Motion for Summary Judgment) alleges that plaintiff Sharonda Qualls was called to testify as a witness on behalf of the defendant in a criminal matter, a homicide trial, in May 1999. Plaintiff's second amended complaint alleges that while Ms. Qualls was awaiting her turn to appear in that trial in the Essex County Courthouse, defendant Kirk Schwindel made loud and threatening statements intended to be heard by her to the effect that the police were going to be "paying a visit" to Ms. Qualls' housing complex and "knocking down some doors".

Despite these threats, Ms. Qualls testified on behalf of the defendant in the criminal trial, as was her constitutional right and duty. A mistrial was ultimately declared in the criminal trial on May 12, 1999 when the jury was unable to reach a verdict. The plaintiff's second amended complaint alleges that less than 48 hours later, approximately 10 to 20 members of the Newark Police Department broke into her apartment in the same housing complex to which Detective

2

Schwindel referred in the Essex County Courthouse, and physically assaulted plaintiff and her family members.

Plaintiffs allege that the named defendants, acted in conspiracy to deprive her of her Civil Rights in violation of the United States Constitution, including acting to intimidate and threaten her from appearing as a witness in a legal proceeding in violation of **42 *U.S.C.* Sections 1985(22) and 1986.**

Defendant Schwindel has made a motion for summary judgment on the basis that plaintiff Sharonda Qualls has not established facts relating to Detective Schwindel's involvement in the procurement and execution of the search warrant used to justify the police officers' breaking into Ms. Qualls' apartment in the early morning hours and assaulting the occupants of the apartment. Defendant's motion does not address the primary allegations made by Ms. Qualls against Defendant Schwindel in the second amended complaint, that he conspired with the other defendants to intimidate Ms. Qualls from testifying in the criminal homicide trial. The defendant's motion for summary judgment should therefore be denied.

### STATEMENT OF FACTS

For purposes of the present motion, the relevant facts are as follows.

During the month of May 1999, plaintiff Sharonda Qualls was called to testify on behalf of defendant Kareem

3

Coleman in a homicide trial before the Honorable Michael J. Casale, J.S.C., Essex County Indictment No. 98-07-3074. (See Affidavit of Sharonda Qualls).

Ms. Qualls was called to testify on behalf of Mr. Coleman to provide testimony that, if believed, could establish an alibi for the defendant and result in his exoneration. (*Id.*)

The Essex County Prosecutor's Office, which employs defendant Schwindel as a Detective, was fully aware of the nature of Ms. Qualls' testimony and the potential harmful effect it might have on the ultimate success of their prosecution of Mr. Coleman. (*Id.*)

Sharonda Qualls was present in the Essex County Courthouse during the course of the Coleman trial during May 1999. She sat in the public area outside Judge Casale's courtroom awaiting her turn to testify. (*Id.*)

While Ms. Qualls sat in the public area, other individuals involved in the trial waited in this same area. Among them was defendant Schwindel. Prior to Ms. Qualls being called to testify on May 5, 1999, Detective Schwindel made loud and threatening comments to others in the area, which related to Ms. Qualls. Sharonda Qualls does not contend that Detective Schwindel spoke directly to her or addressed her by name, but his statements were reasonably interpreted by her as directed at her and meant to be heard by her. (*Id.*)

Detective Schwindel stated in a loud voice that the police were going to "pay Bradley Court a visit" and "knock down some doors." He referred to residents of Bradley Court as "animals". (*Id.*)

Sharonda Qualls and her children, plaintiffs Lawrence Qualls and Fatiesha Qualls, are residents of the Bradley Court housing complex to which Detective Schwindel referred. (*Id.*)

Plaintiff Qualls interpreted Detective Schwindel's aggressive statements to have been made for the purpose of intimidating her and discouraging her from providing truthful testimony in the criminal trial. (*Id.*). Ms. Qualls nevertheless testified on behalf of Mr. Coleman in the criminal trial on May 5, 1999. (*Id.*)

The day after she testified, on May 6, 1999, a search warrant was obtained for Newark Housing Authority, Bradley Court Complex, Apartment #25, located at 82 North Munn Avenue in Newark, the address where Ms. Qualls lives with her children. (*Id.*)

After Ms. Qualls testified in Mr. Coleman's trial and prior to the jury's verdict, Detective Schwindel again made loud and aggressive statements within her hearing to the effect that police would be paying a visit to Bradley Court to "break down some doors". (*Id.*)

5

On or about May 12, 1999, the jury in the homicide trial indicated that they were unable to reach a verdict and a mistrial was declared.

Less than 48 hours later, on May 14, 1999, at 5:30 p.m., Sharonda Qualls and her family were sleeping in their apartment when law enforcement officers employed by the City of Newark broke into the residence, tearing the apartment door off its hinges, just as Detective Schwindel had threatened during the trial. (*Id.*) The officers destroyed the apartment and assaulted Ms. Qualls and her family members. (*Id.*)

**LEGAL ARGUMENT**

**POINT ONE**

**GENUINE ISSUES OF MATERIAL FACT EXIST
AS TO PLAINTIFF'S CAUSE OF ACTION
FOR INTIMIDATION OF A WITNESS AND
DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT SHOULD BE DENIED**

Plaintiff Sharonda Qualls has alleged a cause of action against Detective Kirk Schwindel for violation of **42 *U.S.C*. Section 1985(2)** which provides in relevant part:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injury such party or witness in his person or property on account of his having so attended or testified.

In considering the application of this statute to the circumstances before them, the Third Circuit in *Thomas v. Ford Motor Company,* 137 F. Supp. 2d 575 (3rd Cir. 2001) explained

6

that the purpose behind this legislation is an "'…intent to insulate witnesses, parties and grand or petit jurors from conspiracies to pressure or intimidate them in the performance of their duties, and an intent to guard against conspiracies the object of which is to deny citizens the equal protection of the laws. ' *Brauer v. Horowitz,* 535 F. 2d 830, 839 (3d Cir. 1976). …section 1985(2) is concerned 'with conspiratorial conduct that directly affects or seeks to affect parties, witnesses or grand or petit jurors.' *Id*. at 840." *Thomas, supra,* at 586-587.

In *Chahal v. Paine Webber, Inc.*, 725 F. 2d 20 (2d Cir. 1984), the plaintiffs alleged that Paine Webber engaged in a conspiracy to intimidate an expert witness from testifying in their behalf. *Id.* at 22. The plaintiffs alleged that a representative of Paine Webber contacted the expert witness's employer and convinced the employer to threaten the expert witness with termination if he testified in the plaintiffs' behalf. *Id.* The Court held that in those circumstances, the allegation of direct intimidation stated a claim under section 1985(2). *Id*. 15 25.

In *Brever v. Rockwell International Corp.*, 40 F. 3d 1119 (10th Cir. 1994), the Court found that the plaintiffs stated a valid claim for violation of section 1985(2). The plaintiffs in that case claimed that their rights were violated because they were subject to intimidation regarding their cooperation with the Federal Bureau of Investigation's inquiry into environmental crimes occurring at their place of employment. *Brever*, 40 F. 3d at 1123. The plaintiffs alleged intimidating behavior which included creation of hazardous working conditions, illegal entrance into the plaintiffs' homes, harassing phone calls, illegal wiretapping, vandalizing of vehicles, firing of gunshots into one plaintiff's yard, threats of bodily injury and attempted arson of one plaintiff's home. *Id*. at 1124.

Both *Chahal* and *Brever* allege a type of direct intimidation of witnesses that is similar to what is alleged by plaintiffs in this case. Ms. Qualls was directly intimidated by the conspiratorial actions of these defendants. Detective Schwindel made loud and aggressive statements clearly intended to intimidate Sharonda Qualls from providing truthful testimony in the homicide trial. Detective Schwindel threatened prior to Ms. Qualls' testimony on May 5, 1999, that police would be "paying a visit" to her apartment complex and "breaking down some doors". The very day after she testified, on May 6, 1999, a search warrant was issued for Ms. Qualls' apartment. A mistrial was declared in the criminal trial on May 12, 1999. Just 48 hours later, police in fact appeared at Ms. Qualls to break down her door and physically assault Ms. Qualls and her children.

Detective Schwindel does not deny making the statements overheard by Ms. Qualls and does not address the intimidation of witness claim in this motion for summary judgment.

In his Affidavit in support of this motion, Detective Scwindel admits that he was present in the Essex County Courthouse during the homicide trial of Kareem Coleman in May of 1999. In the Affidavit, Detective Schwindel claims that during the time he was present in the courthouse, he never had a conversation with Sharonda Qualls and never made any comments directed to Sharonda Qualls.

Detective Schwindel does not deny the allegations that form the essence of plaintiff's claim and are clearly asserted in plaintiff's second amended complaint. Detective Schwindel does not state in his affidavit that he never stated to any individual in Sharonda Qualls' presence that the police would be making a "visit to Bradley Court and breaking down some doors". Detective Schwindel is fully aware of Ms. Qualls' allegation that he made such statements from the contents of the second amended complaint. If he never made these remarks, his affidavit would reasonably be expected to contain a denial of this conduct. The fact that the allegations are not denied would lead to the reasonable conclusion that Detective Schwindel did make these statements but is trying to skirt the issue by claiming that he did not make them directly to Sharonda Qualls. This is completely consistent with Sharonda Qualls' allegations and recollections of the events of that day. Sharonda Qualls never claimed that Detective Schwindel addressed her directly, but that he intentionally made these statements in a loud voice in her presence to others in the courtroom waiting area.

Detective Schwindel claims that he should be entitled to summary judgment in this case on the basis that he had no role in the procurement of the search warrant or its execution. Even assuming for the purposes of argument that this position is accurate, it does not address Detective Schwindel's role in the conspiracy to intimidate Ms. Qualls' from testifying as a witness in the criminal trial.

*Fed. R. Civ. P.* 56 provides that summary judgment should be granted only if, upon review of material properly before the Court, and viewing the evidence in a light most favorable to the non-moving party, the Court is convinced that no genuine issue of material fact remains for trial and that the movant is entitled to judgment as a matter of law. *See Celotex Corp v. Catrett*, 477 *U.S.* 317, 106 *S. Ct.* 2548, 2552-53, 91 *L. Ed.* 2d 265 (1986).

In this case, there are substantial and genuine issues of fact as to defendant Schwindel's role in the attempt to intimidate a witness, Ms. Qualls, in this criminal trial. The affidavit submitted by Detective Schwindel in support of

8

this motion does not conclusively answer or even address the essential issues that remain unresolved in this case. Accordingly, summary judgment is not appropriate in this case.

## POINT TWO
## DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S NEW JERSEY TORT CLAIMS ACT ALLEGATIONS

Detective Schwindel alleges that he is entitled to summary judgment on plaintiff's claims under the New Jersey Tort Claims Act because plaintiffs have not met the threshold standard under the Act for a permanent and substantial injury. *N.J.S.A.* 59:9-2(d).

The Tort Claims Act does not apply to conduct which was "outside the scope of [the defendant's] employment or constituted a crime, actual fraud, actual malice or willful misconduct." *N.J.S.A.* 59:3-14. Willful misconduct is the commission of a forbidden act with actual knowledge that it is forbidden. *Marley v. Palmyra Bor.,* 193 *N.J. Super.* 271, 294-95 (L. Div. 1983).

A jury could reasonably find that defendant Schwindel's conduct involved fraud, malice or misconduct in the circumstances alleged by plaintiffs.

Under the Tort Claims Act, a defendant public employee is entitled to immunity only if he acts in good faith in the execution or enforcement of the law. The allegations of plaintiffs' second amended complaint indicate that Detective Schwindel acted willfully and not in good faith in his efforts to intimidate Sharonda Qualls from testifying in this criminal matter. The immunity afforded by the Tort Claims Act is, therefore, not available to him.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that defendant Schwindel's motion for summary judgment be denied.

**ALGEIER WOODRUFF, P.C.**
**Attorneys for Plaintiffs**


By:_____
Robert B. Woodruff

Dated: May 24, 2004