## UNITED STATES DISTRICT COURT

District of New Jersey

Chambers of
**William H. Walls**
District Judge

Martin Luther King Jr.
Federal Courthouse
50 Walnut Street
Newark, New Jersey 07102

(973) 645-2564
(973) 645-3436 Fax

<u>NOT FOR PUBLICATION</u>

<u>LETTER ORDER</u>

<u>ORIGINAL ON FILE WITH CLERK OF COURT</u>

May 10, 2005

**Appearances:**

Robert Woodruff
Algier Woodruff, P.C.
60 Washington Street
Morristown, New Jersey 07960

Paulette Brown
Duane Morris LLP
744 Broad Street, Suite 1200
Newark, New Jersey 07102

Re:   <u>Qualls et al. v. Newark et al.</u>; No. 01-2860 (WHW)
         Motions for Summary Judgment

Dear Counsel:

Defendants City of Newark (the "City"), Willie Thomas ("Thomas"), Daryl Strickland ("Strickland"), Captain Gary S. Prystauk ("Prystauk"), and Detective Rocco Buglione ("Buglione") (together, the "Newark Defendants") bring a motion for summary judgment. Defendant Kirk Schwindel ("Schwindel") brings a separate motion for summary judgment. Plaintiffs Sharonda Qualls ("Qualls"), Lawrence Qualls, Fatiesha Qualls, and Gareth Jones

(together, "Plaintiffs") oppose the motions. The motions are decided without oral argument pursuant to Fed.R.Civ.P. 78. The motions of defendants Schwindel, City of Newark, Thomas, and Strickland are granted. The motions of defendants Prystauk and Buglione are granted in part and denied in part.

**FACTS AND PROCEDURAL BACKGROUND**

In May 1999, Qualls was called to testify on behalf of Kareem Coleman, a defendant in a criminal homicide trial in Essex County Superior Court. Qualls was called to provide testimony that, if believed, could establish an alibi for the defendant. Schwindel, a detective with the Essex County Prosecutor's Office, was also present during the Coleman trial. Qualls alleges that while she and Schwindel were waiting in the public area outside the courtroom, Schwindel made several "loud and threatening comments to others in the area," which Qualls claims were intended for her benefit. Schwindel allegedly said to an unidentified third person or persons that the police were going to "pay Bradley Court a visit" and "knock down some doors." Schwindel also allegedly referred to the residents of Bradley Court as "animals." Schwindel denies making any comments about Bradley Court to anyone at the Essex County Courthouse, and denies making any comments directed to Qualls.

Qualls claims that these comments were intended for her benefit because she is a resident of the Bradley Court apartment complex. Qualls interpreted Schwindel's statements to have been made for the purpose of intimidating her and discouraging her from testifying in the Coleman trial. Qualls nevertheless testified in the trial on May 5, 1999. The jury was unable to reach a verdict, and a mistrial was declared in the Coleman trial on May 12, 1999.

Meanwhile, Defendants claim that defendant Thomas, an undercover detective with the Newark Police Department, was conducting an ongoing narcotics investigation at the Bradley Court apartment complex. Defendants claim that the investigation, which was based on information obtained from a confidential informant (the "CI"), began in April 1999. Defendants claim that the CI told Thomas that he could purchase narcotics from "Sharonda," a heavy-set black female, in apartment 25.

Defendants claim that on May 3, 1999, Thomas went to Bradley Court to make an undercover narcotics purchase. Thomas claims that he knocked on the door of apartment 25, and was approached by a heavy-set black female who was standing in the hallway. This female asked Thomas what he needed. After he told her he wanted heroin, she used a key to unlock the door to apartment 25, entered the apartment and returned with two bags of heroin, which she sold to Thomas. Qualls denies that she sold narcotics to Thomas and claims that she was at the Essex County courthouse on May 3, 1999.

On May 6, 1999, the day after Qualls testified in the Coleman trial, Thomas made applications for search warrants for apartment 25 and other apartments at the Bradley Court complex. Judge Julius Feinberg approved Thomas' application and authorized search warrants for these apartments. Plaintiffs claim that the warrant was based on a false affidavit provided by Thomas. Thomas testified at his deposition that he assumed the woman he purchased the heroin from was the "Sharonda" described by the CI, but admits that the Sharonda Qualls present in apartment 25 when the search warrant was executed is not the same person who sold him heroin on May 3, 1999.

On May 14, 1999, two days after a mistrial was declared in the Coleman homicide trial, members of the Newark Police Department executed the warrant to search apartment 25 of the Bradley Court complex. Plaintiff Qualls, her children Lawrence Qualls and Fatiesha Qualls (Baskerville), as well as plaintiff Gareth Jones, were sleeping in apartment 25 when the Newark police executed the warrant. During the search of apartment 25, Qualls claims that she was physically assaulted, forced to submit to a cavity search by defendant Stephanie Treadwell, was tightly handcuffed and dragged by officers from her bedroom into a living room area. Qualls later identified Prystauk, Buglione and Detective Julian Jova as being in her apartment during the execution of the warrant. Plaintiffs also alleged that defendants physically assaulted Qualls' son, Lawrence Qualls, and gave him a "blackened and swollen right eye and sore ribs." Plaintiffs alleged that the officers handcuffed Lawrence Qualls (aged 12), Fetiesha Qualls (aged 7) and Gareth Jones (aged 6). Qualls claims that the officer who gave her the warrant indicated to her that "this was a favor for a friend." See Qualls Affidavit ¶ 13. The Newark police recovered 10 "decks" of heroin during the raid, and arrested an individual named Daquan Harris, who was found sleeping in the living room of apartment 25. Qualls claims that she did now know Daquan Harris. Qualls was never arrested or charged with any criminal conduct arising out of this matter.

Plaintiffs' second amended complaint brings claims for violations of their federal civil rights and New Jersey state constitutional rights, as well as claims for violations of New Jersey common law.

**LEGAL STANDARDS**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Chippollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.) (en banc), cert. denied, 483 U.S. 1052 (1987).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  Boyle v. Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

    The Supreme Court has stated that in evaluating a motion for summary judgment:

> [t]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmovant] on the evidence presented.  The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [nonmovant] is entitled to a verdict. . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party.  See id.

    To survive a motion for summary judgment, a nonmovant must present more than a mere scintilla of evidence in his favor.  Id.  He cannot simply reassert factually unsupported allegations contained in his pleadings.  See Celotex, 477 U.S. at 325; Clark v. Clabaugh, 20 F.3d 1290, 1294 (3d Cir. 1994).  Further, only evidence that would be admissible at trial may be used to test a summary judgment motion; evidence with a deficient foundation must be excluded from consideration.  Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989).

**DISCUSSION**

**I.      Defendant Schwindel's Motion**

Schwindel argues that Plaintiffs' claims against him cannot stand because there is no evidence that Schwindel had any role in procuring or executing the warrant to search Qualls' apartment.  Although Schwindel denies making any comments regarding Bradley Court while at the Essex County courthouse, Schwindel argues that even if he did, there is no evidence that he caused the Newark police department to obtain or execute the warrant.  It is uncontested that Schwindel was not present during the execution of the warrant.  Schwindel has testified that he does not know Detective Thomas and did not ask Thomas or any other law enforcement officer to apply for a warrant to search Qualls' apartment.  Thomas has likewise testified that he does not know Schwindel and that his decision to obtain and execute the search warrant for Qualls' apartment was based on an ongoing narcotics investigation.

Plaintiffs argue that a reasonable jury could find that Schwindel caused the raid on Qualls' apartment in retaliation for her testimony during the Coleman homicide trial based on his alleged comments that the police were going to "break[] down some doors" at the Bradley Court complex.  The Court disagrees.  Even assuming Schwindel did make these comments, there is no evidence that Schwindel knew or had contact with Thomas or any of the other named co-defendants.   Although Schwindel's and Thomas' testimony is self-serving and cannot be taken

as fact, in the absence of any evidence at all of a connection between Schwindel and the other defendants, Plaintiffs have not met their burden of showing that there is a genuine issue for trial.

Plaintiffs also argue that even if Schwindel did not conspire to violate their rights by orchestrating an illegal raid on Qualls' apartment, his comments at the Essex County courthouse were intended to intimidate Qualls and to deter her from testifying at the Coleman trial in violation of 42 U.S.C. § 1985(2). To prove a claim under § 1985(2), a plaintiff must show "(1) a conspiracy between two or more persons; (2) to deter a witness by force, intimidation, or threat from attending any court of the United States or testifying freely in any matter pending therein, which (3) causes injury to the claimant." Diorio v. City of Philadelphia, 1997 WL 158130 at *4 (E.D.Pa. March 31, 1997).

Qualls cannot bring a claim under § 1985(2) because she cannot prove that anyone conspired to deter her from testifying in a *federal court* proceeding. By its terms, § 1985(2) applies only to conspiracies to prevent someone from testifying in "any court of the United States." The constitutional basis for the enactment of § 1985(2) was Congress's plenary power over the federal courts. There is no such authority to act over state courts. See Redcross v. County of Rensselaer, 511 F.Supp. 364, 374 (N.D.N.Y. 1981); McCord v. Bailey, 636 F.2d 606, 615 (C.A.D.C. 1980). The alleged conspiracy in this case was to prevent Qualls from testifying in a state court trial and cannot form the basis of claim under § 1985(2).

For the reasons stated above, Schwindel has met his burden under Fed.R.Civ.P. 56. Plaintiffs' second amended complaint is dismissed as to defendant Schwindel.

## II. The Newark Defendants' Motion

### A. Plaintiffs' Claims Under 42 U.S.C. § 1983

#### 1. Defendant City of Newark

A municipality may be held liable under 42 U.S.C. § 1983 only in limited circumstances. See Monell v. Dep't of Social Serv., 436 U.S. 658, 688 (1978). A local government "may not be held liable for constitutional violations solely upon the basis of *respondeat superior*, municipal liability only arises when a constitutional deprivation results from an official custom or policy." Montgomery v. De Simone, 159 F.3d 120 (3d Cir. 1998) (citing Monell). Plaintiffs must also prove that the municipal practice was the proximate cause of the injuries suffered. See Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

Plaintiffs argue that the City is liable because it supported a "systemwide conspiracy" to violate Plaintiffs' rights. Plaintiffs claim that the Essex County Prosecutor's Office "had a real problem" with Qualls' testimony in the Coleman case, and therefore conspired with the Newark police department to "send her a message." Plaintiffs further argue that although they have no evidence of misconduct prior to the incidents involving Plaintiffs, the City's failure to take remedial action against its co-defendants is evidence of a preexisting policy allowing for the violation of Plaintiffs' rights.

In support of their argument, Plaintiffs rely on Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985). In Grandstaff, the Fifth Circuit held that "subsequent acceptance of dangerous recklessness by the policy maker tends to prove his preexisting disposition and policy." Id. at 171. However, Grandstaff is not from this circuit, and more importantly, is no longer good law. In Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001), the Fifth Circuit clarified its

holding in Grandstaff, stating that the opinion is often "misread as suggesting that municipal liability may be imposed for individual unconstitutional acts of lower-level employees" and that "isolated instances of police misbehavior do not prove acquiescence by a city policymaker in that conduct." Id.

In the Third Circuit, the law is also clear that to establish a municipal custom, a plaintiff must show that "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [her] injuries." Beck v. City of Philadelphia, 89 F.3d 966, 972 (3d Cir. 1996).

Plaintiffs here have presented no evidence of any similar unlawful conduct by Newark police officers in the past. The law is clear that an isolated incident of alleged misconduct does not amount to municipal liability. See Groman v. Manalapan, 47 F.3d 628, 637 (3d Cir. 1995). In addition, Plaintiffs' claim that the City took no action in response to their allegations is inaccurate. After her apartment was searched, Qualls filed a report with the Newark Police Department's Internal Affairs ("IA") department. During discovery, the City provided Plaintiffs with IA's detailed 18-page report of its investigation into Plaintiffs' allegations. IA followed up on each of the allegations described in the second amended complaint, and for varying reasons, found that there was no evidence to support Qualls' allegations. Without expressing an opinion regarding the report's conclusions, the Court does find this report contradicts Plaintiffs' claim that the City failed to take remedial measures in response to her claims.

Plaintiffs' § 1983 claim is dismissed as to defendant City of Newark because Plaintiffs have failed to present any evidence tending to show a policy or custom that tolerated and caused Plaintiffs' alleged constitutional deprivation.

### 2. Defendant Willie Thomas

Plaintiffs' claims against Thomas are based on their assertion that he fraudulently obtained the warrant that authorized the search of their apartment. In his affidavit used to obtain the warrant, Thomas stated that he had obtained information from the CI that a heavy-set black woman named "Sharonda" sold heroin from apartment 25 at Bradley Court. He also stated that he purchased two bags of heroin from a heavy-set black woman who retrieved the drugs from inside apartment 25 after opening the front door with a key.

"A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in Franks v. Delaware, 438 U.S. 154, 155-56 (1978)." Sherwood v. Mulvihill, 113 F.3d 396 (3d Cir. 1997). Under Franks and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. See Franks, 438 U.S. at 171-72.

Thomas argues that Plaintiffs have not submitted evidence that he knew the statements made in his affidavit were false. In fact, Plaintiffs have not submitted any evidence showing that any statements in Thomas' affidavit were false. Thomas stated at his deposition that he had assumed the woman who sold him the drugs was "Sharonda," but also admitted that this person was not the same person who was in apartment 25 when the search warrant was executed. Thomas' affidavit did not rely on "Sharonda" and the woman who sold Thomas drugs from apartment 25 being the same person. Judge Feinberg issued a search warrant based on Thomas'

sworn statement that he purchased drugs from a heavy-set black woman with keys to apartment 25, after a CI told him that a woman fitting that description regularly sold drugs at this location. Judge Feinberg determined that these statements were sufficient to establish probable cause that narcotics were present in apartment 25, which turned out to be true.

The Court finds that Thomas' statements did not "create a falsehood" that were material to Judge Feinberg's finding of probable cause as required by Franks. Plaintiffs § 1983 claim is dismissed as to defendant Thomas.

### 3. Defendants Daryl Strickland, Gary Prystauk and Rocco Buglione

Strickland, Prystauk and Buglione contend that they cannot be held liable under § 1983 because they are protected by the doctrine of qualified immunity under the Eleventh Amendment. It is well-established "a suit in federal court by private parties seeking to impose liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." Quern v. Jordan, 440 U.S. 332, 341 (1979). This bar against suits also extends to state officials acting in their official capacities. Kentucky v. Graham, 473 U.S. 159, 167 (1985); Hawaii v. Gordon, 373 U.S. 57, 58 (1963) ("Relief sought nominally against a [state official] is in fact against the sovereign if the decree would operate against the latter.")

However, the Eleventh Amendment does not shield state officials from "wrongful individual action, and the citizen is allowed a remedy against the wrongdoer personally." Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 462 (1945). Plaintiffs may assert claims against state officials in their individual capacities. To defeat an assertion of qualified immunity, a § 1983 plaintiff must show that the officer acted in violation of a clearly established

constitutional right of which a reasonable person would have known.  See Nixon v. Fitzgerald, 457 U.S. 731 (1982).

      Strickland is a member of the Newark police department and was involved in the IA investigation of Qualls' allegations.  Strickland was not present at Bradley Court when the search warrant was executed and did not participate in any activities leading up to the alleged violations of Plaintiffs' civil rights.  Plaintiffs' § 1983 claims are dismissed as to Strickland because Plaintiffs do not allege that he violated any of their constitutional rights.

      Plaintiffs allege that Prystauk and Buglione violated their Fourth Amendment rights to be free from unreasonable searches and seizures and the use of excessive force.  Plaintiffs also allege that Lawrence Qualls', Fateisha Qualls' and Gareth Jones' free association rights were violated because they were searched because of their "family association" with Sharonda Qualls.

      Plaintiffs allege that Prystauk and Buglione were among the approximately 30 police offices who exercised a search warrant on her apartment on May 14, 1999.  As discussed in connection with the § 1983 claim against Thomas, Plaintiffs have not demonstrated that the search warrant was granted without probable cause, so this cannot be the basis for a § 1983 claim against Prystauk and Buglione.

      Plaintiffs also claim that Prystauk and Buglione used excessive force during the exercise of the search warrant.  Plaintiffs allege that the officers who executed the warrant, including Prystauk and Buglione, used excessive force when they "ransacked" Qualls' apartment, handcuffed the three young children who were present in the apartment, conducted a cavity search of Qualls, and generally treated all Plaintiffs roughly.  Plaintiffs allege that Lawrence

Qualls suffered injuries to his face and ribs, and that the other Plaintiffs were "humiliated" and suffered emotional injuries.

The Fourth Amendment requires that any force used by a police officer to effectuate an arrest or search must be reasonable. See Graham, 490 U.S. 386 (1989). The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

Plaintiffs face a significant uphill battle in proving that Prystauk and Buglione used excessive force during the execution of the search warrant. The Internal Affairs department conducted an apparently thorough investigation of Qualls' allegations, and found that the arresting officers did not use excessive force. In addition, the injuries suffered by Plaintiffs' appear to be minor. That said, the parties' differing accounts of the events of May 14, 1999 create enough of an evidentiary dispute to make summary judgment inappropriate. Not "every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, is constitutionally unreasonable." Graham, 490 U.S. at 396. On the other hand, the absence of serious physical injury does not necessarily mean that force was not excessive. See Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). Although law enforcement officers are given ample room for mistaken judgments in the execution of their official duties, Malley v. Briggs, 475 U.S. 335, 343 (1986), summary judgment is inappropriate where the evidence would support a jury finding that the officers acted unreasonably and used excessive force. See Groman, 47 F.3d at

634. A reasonable jury could find that the force used during the execution of the search warrant was excessive in relation to particular circumstances of the case.

Defendants also argue that the claims against Prystauk and Buglione cannot stand because Plaintiffs cannot specifically identify the officers who actually used excessive force against Plaintiffs. The Third Circuit has held that to establish a § 1983 violation, those responsible for the alleged violating conduct must be specifically identified. Sharrar, 128 F.3d at 821.

Lawrence Qualls testified that three male officers entered his bedroom and assaulted him. He describes two of the offices as white, and one as black. Two were tall and one was short. The short officer had "salt and pepper" like hair. Lawrence Qualls said that he could not describe the officers well, but he could recognize their faces. Although Lawrence Qualls' testimony may not definitively establish the identity of the officers who allegedly assaulted him, it does provide sufficient evidence for a jury to determine that Prystauk and Buglione were among the oficers who allegedly assault Lawrence Qualls.

### B. Plaintiffs' Claim Under 42 U.S.C. § 1985(2)

As discussed in connection with Schwindel's motion, Plaintiffs cannot state a claim under 42 U.S.C. § 1985(2) because Plaintiffs have not alleged that any of the defendants conspired to deter Qualls from testifying in a federal court proceeding. Plaintiffs' § 1985(2) claim is dismissed as to all defendants.

### C. Plaintiffs' State Law Claims

Plaintiffs have also alleged New Jersey state law causes of action, such as "assault, battery and false arrest." Defendants argue that the New Jersey Tort Claims Act (the "TCA") immunizes them from liability in this case. The TCA grants immunity to public employees who

act in good faith in the execution or enforcement of any law.  See N.J.S.A. 59:3-3.  The New Jersey Supreme Court has held that the same standard of objective reasonableness that applies in §1983 actions also governs questions of good faith in false arrest matters under the TCA.  See Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000).

As discussed above, a reasonable jury could not find that the actions of defendants Schwindel, Thomas, Strickland or the City of Newark satisfy the requirements of § 1983.  Therefore, Plaintiffs' state law claims are dismissed as to these defendants.  However, because a reasonable jury could find that Prystauk and Buglione did not act in good faith, the TCA does not provide them with immunity.  Summary judgment on Plaintiffs' state law claims is denied as to defendants Prystauk and Buglione.

**CONCLUSION**

It is on this 10th day of May 2005,

ORDERED that the motions of defendants Schwindel, City of Newark, Thomas and Strickland are GRANTED; it is further ORDERED that the motions of defendants Prystauk and Buglione are DENIED in part and GRANTED in part.

**s/ William H. Walls, U.S.D.J.**